## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **Grant Grandstaff**, individually and on behalf of all others similarly situated, § § § | Case No. 4:25-cv-00630 |
| Plaintiff, § § | |
| v. § § | **JURY TRIAL DEMANDED** |
| **The Doe Run Resources Corp. d/b/a The Doe Run Company** § § § § | |
| Defendant. § | **FLSA COLLECTIVE ACTION** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Grant Grandstaff ("Grandstaff") brings this collective action to recover unpaid wages and other damages from The Doe Run Resources Corp. d/b/a The Doe Run Company ("Defendant").

2. Defendant employed Grandstaff as one of its Hourly Employees (defined below) in Missouri.

3. Grandstaff and the other Hourly Employees regularly work more than 40 hours per workweek.

4. However, Defendant does not pay Grandstaff and the other Hourly Employees for all their hours worked, including overtime hours.

5. Rather, Defendant requires Grandstaff and the other Hourly Employees to suit out in protective clothing and safety gear necessary to safely perform their job duties and travel into the mines, while on Defendant's premises.

6.  Likewise, Defendant requires Grandstaff and the other Hourly Employees to change out of and store their safety gear and protective clothing and wash-up, while on Defendant's premises, after being "clocked out." (¶¶ 5-6 together, Defendant's "pre/post shift off the clock policy").

7.  But Defendant does not pay Grandstaff and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, traveling into the mine, and washing-up, "off the clock," before and after their shifts.

8.  Defendant's pre/post shift off the clock policy violates the Fair Labor Standards Act (FLSA) by depriving Grandstaff and the other Hourly Employees of overtime wages when they work in excess of 40 hours in a workweek.

9.  Additionally, Defendant pays Grandstaff and the other Hourly Employees non-discretionary safety, production, and retention bonuses that Defendant fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay (Defendant's "bonus pay scheme").

10. Defendant's bonus pay scheme violates the FLSA by failing to compensate Grandstaff and the other Hourly Employees at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has personal jurisdiction over Defendant based on its substantial business operations in Missouri. Moreover, Defendant maintains its headquarters in St. Louis,

Missouri, operates multiple mines in this state and employs hundreds of employees in this state, including Grandstaff.

13. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. 28 U.S.C. § 1391(b)(2). In particular, Defendant's headquarters where its decisions were made that give rise to this lawsuit is located in the Eastern District, and Eastern Division.

## PARTIES

14. Defendant employed Grandstaff as an underground miner from approximately April 2018 to April 2024.

15. Throughout his employment, Defendant subjected Grandstaff to its pre/post shift off the clock policy and bonus pay scheme.

16. Grandstaff's written consent is attached as Exhibit 1.

17. Grandstaff brings this collective action on behalf of himself and other employees of Defendant on whom Defendant imposed its pre/post shift off the clock policy and bonus pay scheme.

18. The FLSA Collective of similarly situated employees is defined as:

> **All of Defendant's hourly-paid employees who worked at any operation owned, operated, or controlled by Defendant during the three years before this lawsuit was filed up to the day court issues notice (the "Hourly Employees").**

19. Defendant is a New York company with its headquarters in 1801 Park 270 Drive, Suite 300, St. Louis, MO 63146.

20. Defendant may be served with process through its registered agent: CT Corporation System, 5661 Telegraph Rd Ste 4B, Saint Louis, MO 63129-4275.

3

## FLSA COVERAGE

21. At all relevant times, Defendant was and remains an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Defendant was and remains an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Defendant had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, Grandstaff and the other Hourly Employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, Grandstaff and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

27. Defendant has operated for nearly 160 years as a mining and metal production company.[1] It operates mines in Missouri including, but not limited to, the following mines: Sweetwater; Buick; Fletcher; Brushy Creek; Casteel and Mine No. 29. Defendant also operations in other states. "On any given day, about 285 Doe Run employees are underground."[2]

---

[1] https://doerun.com/what-we-do/ (last visited on May 1, 2025)
[2] https://doerun.com/what-we-do/mining-milling/ (lasted visited on May 1, 2025)

4

28. To meet its business objectives, Defendant employs workers, including Grandstaff and the other Hourly Employees, to mine and process lead, copper zinc concentrates. Defendant hires crews to drill and blast dolomite rock containing lead, zinc and copper minerals in underground areas known as mine faces.

29. For example, Defendant employed Grandstaff at the Sweetwater mine where he spent virtually his entire workday underground.

30. Grandstaff's job duties included hauling rock, loading rock, blasting, working on utilities, heavy maintenance on rigs, and other typical mining duties.

31. Grandstaff's job duties included donning and doffing his safety gear and protective clothing, traveling into the mine, and washing up, on Defendant's premises, before and after his scheduled shifts.

32. Throughout his employment, Grandstaff recorded his "on the clock" hours using Defendant's designated timekeeping system.

33. Thus, Defendant's employment records reflect the number of "on the clock" hours Grandstaff recorded working each week.

34. Throughout his employment, Grandstaff regularly worked more than 40 hours a workweek.

35. Indeed, throughout his employment, Grandstaff typically worked 45-50 hours per week.

36. But throughout his employment, Defendant did not pay Grandstaff for all his hours worked.

37. Instead, throughout his employment, Defendant subjected Grandstaff to its pre/post shift off the clock policy.

38. Specifically, Defendant required Grandstaff to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, proximity box), all of which were integral and indispensable parts of his job, but Defendant failed to compensate him for this time. These activities took Grandstaff approximately 25-45 minutes each workday, much if not all of such work time was off-the-clock and thus uncompensated.

39. Defendant also had a policy of forbidding employees from clocking in more than 7 minutes before the start of their scheduled shift. Yet, Defendant required Grandstaff and other hourly workers to arrive at the work site before their official start of their scheduled shifts with enough time to dress out in their required protective clothing and safety gear and gather their tools, all of which were an integral and indispensable parts of their jobs.

40. Grandstaff could not perform his principal job duties in accordance with Defendant's policies, procedures, and expectations without this protective clothing and safety gear and travel into and out of the mine.

41. Indeed, much of the gear Grandstaff utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

42. The donning of protective clothing and safety gear are therefore integral and indispensable work duties for Grandstaff.

43. Likewise, Defendant required Grandstaff to travel out of the mine, remove and store his safety gear, protective clothing, tools and equipment and wash up and decontaminate each day at the end of his shift, all or most of which was "off the clock" and without compensation.

44. This took Grandstaff approximately 25-45 minutes each workday.

45. Grandstaff could not safely perform his job duties in accordance with Defendant's policies, procedures, and expectations without removing and storing this safety gear, protective clothing, tools and equipment and washing up each workday.

46. The removal and storage of safety gear and protective clothing and washing up each day are therefore integral and indispensable work duties for Defendant's miners including Grandstaff and the other Hourly Employees.

47. But under its pre/post shift off the clock policy, Defendant does not compensate him for the same.

48. Thus, because of its pre/post shift off the clock policy, Defendant failed to pay Grandstaff overtime wages for all his overtime hours worked during workweeks Grandstaff worked in excess of 40 hours.

49. Furthermore, despite its agreement to do so, Defendant never provided or made available work free, uninterrupted meal breaks to Grandstaff, as those terms are defined by the FLSA and related case law. Instead, Defendant required Grandstaff and other hourly employees to remain continuously on duty, ready and able to address whatever issues might arise.

50. Defendant likewise never provided or made available work free, uninterrupted rest breaks to Grandstaff.

51. Rather, Grandstaff spent his entire workday working on behalf of Defendant for its primary benefit.

52. Grandstaff and the other Hourly Employees perform their jobs under Defendant's supervision and use materials, equipment, and technology Defendant approves and supplies.

53. Defendant requires Grandstaff and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

54. Grandstaff's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Defendant.

55. At the end of each pay period, Grandstaff and the other Hourly Employees receive wages from Defendant that are determined by common systems and methods that Defendant selects and controls.

56. Likewise, the other Hourly Employees typically record working approximately 45-50 or more hours "on the clock."

57. But, just as with Grandstaff, Defendant fails to pay them for all their hours worked.

58. Indeed, Defendant uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Grandstaff.

59. Specifically, just as with Grandstaff, Defendant requires them to arrive early to work, dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, proximity box), and attend safety meetings, fundamentally necessary to performing their jobs and travel into the mine, much or all such work was "off the clock," and without compensation. Grandstaff knows this because he worked for Defendant for multiple years and observed his coworkers.

60. And Defendant requires them to exit the mine and remove and store their safety gear and protective clothing, wash up after their shifts, likewise, much or all of which is "off the clock" and without compensation.

61. And like Grandstaff, much if not all of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

62. But, like Grandstaff, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their assigned shifts.

63. Thus, just as with Grandstaff, Defendant does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their scheduled shifts.

64. And, just as with Grandstaff, these job duties take the other Hourly Employees approximately the same range of time as it takes Grandstaff to complete each workday.

65. And, despite its agreement to do so, Defendant never provided or made available work free, uninterrupted meal breaks to the other Hourly Employees.

66. Defendant likewise never provided or made available to work free, uninterrupted rest breaks to the other Hourly Employees.

67. Rather, like Grandstaff, the other Hourly Employees spend their entire workdays working on behalf of Defendant for its primary benefit.

68. Defendant fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Defendant does not want performed.

69. And Defendant knows, should know, or recklessly disregards whether Grandstaff and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Defendant's primary benefit. Indeed, Defendant has been sued before for just such wage violations, but never corrected its practices.

70. Thus, Defendant requests, suffers, permits, or allows Grandstaff and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

71. Despite accepting the benefits, Defendant does not pay Grandstaff and the other Hourly Employees for the compensable work they perform "off the clock."

72. Thus, under Defendant's uniform pre/post shift off the clock policy, Grandstaff and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

73. And throughout their employment, Defendant has not paid Grandstaff and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

74. Instead, Defendant pays Grandstaff and the other Hourly Employees under its bonus pay scheme.

75. Specifically, Defendant pays Grandstaff and the other Hourly Employees non-discretionary safety, production, and retention bonuses that it fails to include in these employees' regular rates of pay for overtime purposes.

76. Thus, under Defendant's bonus pay scheme, it does not pay Grandstaff and the other Hourly Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 a workweek.

77. The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Defendant's pre/post shift off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

78. Grandstaff brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

79. Like Grandstaff, the other Hourly Employees are victimized by Defendant's pre/post shift off the clock policy and bonus pay scheme.

80. Other Hourly Employees worked with Grandstaff and indicated they were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy and bonus pay scheme.

81. Based on his experience with Defendant, Grandstaff is aware Defendant's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

82. The Hourly Employees are similarly situated in the most relevant respects.

83. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

84. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

85. Rather, Defendant's pre/post shift off the clock policy and bonus pay scheme render Grandstaff and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

86. Defendant's records reflect the number of "on the clock" hours the Hourly Employees were recorded as working each week.

87. Defendant's records also show Defendant paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

11

88. The back wages owed to Grandstaff and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

89. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts.

90. Therefore, the issue of damages does not preclude collective treatment.

91. Grandstaff's experiences are therefore typical of the experiences of the other Hourly employees.

92. Grandstaff has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

93. Like each Hourly Employee, Grandstaff has an interest in obtaining the unpaid wages owed under federal law.

94. Grandstaff and his counsel will fairly and adequately protect the interests of the Hourly employees.

95. Grandstaff retained counsel with significant experience in handling complex collective action litigation.

96. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Defendant will reap the unjust benefits of violating the FLSA.

97. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

98. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Defendant.

99. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

100. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

   a. Whether Defendant imposed its pre/post shift off the clock policy on the Hourly Employees;

   b. Whether Defendant's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

   c. Whether Defendant paid the Hourly Employees non-discretionary bonuses;

   d. Whether Defendant engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime;

   e. Whether Defendant failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration— for all overtime hours worked;

   f. Whether Defendant's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration— for all overtime hours worked was made in good faith; and

   g. Whether Defendant's violations were willful.

102. Grandstaff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

103. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly violated the FLSA with respect to Grandstaff and the other Hourly Employees. This is especially true given that Defendant has been sued before for just such wage violations, but failed to correct its pay practices.

104. Defendant's pre/post shift off the clock policy and bonus pay scheme deprived Grandstaff and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

105. There are hundreds of similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

106. The Hourly Employees are known to Defendant, are readily identifiable, and can be located through Defendant's business and personnel records.

## **DEFENDANT'S VIOLATIONS WERE WILLFUL**

107. Defendant knew it employed the Hourly Employees.

108. Defendant knew it was subject to the FLSA's overtime provisions.

109. Defendant knew Grandstaff and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

110. Defendant knew the FLSA required it to pay non-exempt employees, including Grandstaff and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

111. Defendant knew Grandstaff and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Defendant recorded their "on the clock" hours via its timekeeping system.

112. Defendant knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

113. Defendant knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

114. Defendant knew it required the Hourly Employees to don and doff safety gear and protective clothing, then travel into the mines, and wash-up and decontaminate, "off the clock."

115. Defendant knew it controlled the Hourly Employees' work procedures.

116. Defendant knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Defendant.

117. Defendant knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Defendant.

118. Defendant knew the Hourly Employees routinely performed this daily, required "off the clock" work for Defendant's predominant benefit.

119. In other words, Defendant knew the Hourly Employees performed compensable work (e.g., donning/doffing their safety gear and protective clothing, then traveling into the mines, and washing-up) "off the clock" and without compensation.

120. Defendant knew it paid Grandstaff and the other Hourly Employees non-discretionary safety, production, and retention bonuses.

15

121. Defendant knew these non-discretionary bonuses were not included in Grandstaff' and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

122. And Defendant knew the FLSA required it to pay Grandstaff and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

123. Defendant knew Grandstaff and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

124. Defendant has been sued before for wage violations alleging it failed to pay its employees for time spent donning and doffing personal protective equipment and otherwise performing work off the clock.

125. Thus, Defendant knew, should have known, or recklessly disregarded whether it failed to pay Grandstaff and the other Hourly Employees at least 1.5 times their regular rates of pay— based on all remuneration—for all the hours they worked in excess of 40 a workweek.

126. Defendant's failure to pay Grandstaff and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

127. Defendant knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Grandstaff and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

128. Grandstaff brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

129. Defendant violated, and is violating, the FLSA by employing non-exempt employees, such as Grandstaff and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

130. Defendant's unlawful conduct harmed Grandstaff and the other Hourly Employees by depriving them of the overtime wages they are owed.

131. Accordingly, Defendant owes Grandstaff and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

132. Because Defendant knew, or showed reckless disregard for whether, its bonus pay scheme and pre/post shift off the clock policy violated the FLSA, Defendant owes Grandstaff and the other Hourly Employees these wages for at least the past 3 years.

133. Defendant is also liable to Grandstaff and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

134. Finally, Grandstaff and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

135. Grandstaff demands a trial by jury on all Counts.

## **RELIEF SOUGHT**

WHEREFORE, Grandstaff, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Defendant liable to Grandstaff and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Declaration that Defendant's actions violate the FLSA;

d. Judgment awarding Grandstaff and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

e. An Order awarding attorneys' fees, costs, and expenses;

f. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

g. Such other and further relief as may be necessary and appropriate.

Date: May 2, 2025

Respectfully submitted,

By: /s/ *Galvin Kennedy*
Galvin Kennedy
Galvin@KennedyAttorney.com
Federal Bar No. 20791
Texas State Bar No. 00796870
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
Telephone: (713) 425-6445
Facsimile (713) 888-535-9271
AND

/s/ Carl A. Fitz
Carl A. Fitz
carl@fitz.legal
Texas Bar No. 24105863
FITZ LAW PLLC
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000

**ATTORNEYS FOR PLAINTIFF AND PUTATIVE COLLECTIVE MEMBERS**